IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARGARET LYNCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:16CV526 |
| | ) |
| PRIVATE DIAGNOSTIC CLINIC, | ) |
| PLLC, DUKE UNIVERSITY | ) |
| HEALTH SYSTEM, INC. and | ) |
| DUKE UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Margaret Lynch ("Dr. Lynch" or "Plaintiff"), initiated this action, pro se,[1] in Durham County Superior Court, alleging claims of retaliation, race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a claim of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (*See* ECF No. 9.) The action was removed to this Court pursuant to 28 U.S.C. § 1441 on the basis of federal question jurisdiction. (ECF No. 1 ¶¶ 4, 5.) Duke University ("Duke") is the only remaining Defendant in this case.[2] Before the Court is Duke's

---

[1] Counsel for Plaintiff entered a Notice of Appearance on February 9, 2017. (ECF No. 26.)

[2] On December 20, 2016, this Court entered an Order dismissing Defendant, Private Diagnostic Clinic, PLLC, from this lawsuit. (ECF No. 24.) On October 31, 2017, Plaintiff and Defendant, Duke University Health System, Inc., filed a Stipulation of Dismissal of Defendant Duke University Health System, Inc. (ECF No. 35.)

Motion for Summary Judgment, (ECF No. 36), and Plaintiff's Motion to Seal, (ECF No. 41). For the reasons outlined below, the Court will grant both motions.

## I. BACKGROUND

Dr. Lynch, a white female, is a board certified physician, licensed to practice in Illinois and North Carolina. (ECF No. 9 ¶ 1; ECF No. 36-6 ¶¶ 7, 36; ECF No. 38-7 ¶ 2.) During her career, Dr. Lynch has worked in the fields of emergency medicine, urgent care, and occupational health. (ECF No. 38-7 ¶ 2.) She is the mother and primary caregiver of five children. (*Id.* ¶ 3; *see* ECF No. 36-1 at 8.)

John Vaughn, MD serves as the Director of Duke's Student Health Services which "provides services to more than 15,000 undergraduate, graduate, and professional students." (ECF No. 36-6 ¶ 1.) "On or about September 2013, [Dr. Vaughn] received approval to hire a full-time faculty physician to join the Student Health Services team." (*Id.* ¶ 2.) Dr. Vaughn "enlisted the help of Suzanne Anderson," director of Duke's Medical Staff Recruitment Office to assist with the recruitment of candidates for this position. (*Id.* ¶ 3; ECF No. 36-7 ¶¶ 1, 3.) Once the position was posted online, in October 2013, Plaintiff applied for the available Student Health Physician position at Duke. (ECF No. 9 ¶ 8; *see* ECF No. 36-6 ¶ 11; ECF No. 38-6 at 8; ECF No. 38-7 ¶¶ 6–7.) On November 5, 2013, Ms. Anderson informed Plaintiff that she had not been selected to interview for the position. (ECF No. 38-6 at 21.)

Later, in February 2014 and November 2014, two additional student health physician positions became available at Duke. (ECF No. 36-6 ¶¶ 15, 34.) Plaintiff re-applied in May 2014, (*see* ECF No. 38-6 at 13), and, on September 20, 2014, she was informed by Dr. Vaughn that he had extended an offer to another candidate for the position, instead of Plaintiff, (ECF

2

No. 38-6 at 39). Although Dr. Vaughn received "both written and verbal feedback" concerning potential candidates, Dr. Vaughn served as the decision-maker with respect to hiring for the student health physician positions. (ECF No. 36-6 ¶ 37.) In May 2014, Dr. Vaughn selected a white, female physician to fill the first available position, (ECF No. 36-6 ¶¶ 17, 36; *see* ECF No. 38-6 at 26–28). Then, in September 2014, he selected a black, female physician for the second available position, (ECF No. 36-6 ¶¶ 32, 36; ECF No. 38-6 at 53, 60–62); and on December 1, 2014, he selected Dr. Hunter Spotts, a white, male physician, to fill the third available position. (ECF No. 38-6 at 32; *see* ECF No. 36-6 ¶¶ 35, 36.)

Plaintiff's Complaint alleges, among other things, that Duke failed to hire her: (a) in retaliation for having filed a Charge of Discrimination ("EEOC Charge") against her former employer, (ECF No. 9 ¶ 30); (b) because of her age, (*id.* ¶ 31); (c) because she is the primary caregiver and mother of five children, (*id.* ¶ 32); (d) because she is a woman, (*id.* ¶ 33); and (e) because of her race, (*id.* ¶ 34). On November 15, 2017, Defendant filed the instant motion for summary judgment "on the grounds that Plaintiff's evidence fails to raise a material question of fact to preclude judgment in favor of Duke and that Duke is entitled to judgment in its favor on all claims." (ECF No. 36 at 1.) Plaintiff does not contest Duke's motion with respect to her age and race discrimination claims, conceding that she has failed to carry her burden on those claims. (ECF No. 38 at 2, 19–20.) Thus, this Court need only consider whether Duke's motion for summary judgment should be granted as to Plaintiff's retaliation claim, as well as her sex and sex-plus discrimination claims.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials," *Liberty Lobby*, 477 U.S. at 248 (internal quotation marks omitted), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the party opposing summary judgment must designate "specific facts" in the record "showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a party must "cit[e] to particular parts of . . . the record, including depositions, documents, . . . affidavits or declarations, . . . admissions, interrogatory answers, or other materials"). A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted); *see Ennis v. Nat'l Ass'n of Bus. &*

*Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (finding that "unsupported speculation . . . is not enough to defeat a summary judgment motion").

The court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The role of the court is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### B. Discussion

Plaintiff can establish her claims of discrimination and retaliation through direct or indirect evidence, or by relying on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Plaintiff does not contend that she has direct evidence to support her claims, thus she must rely on the *McDonnell Douglas* burden-shifting framework to prove each of her claims. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (explaining that in the absence of direct evidence of discrimination, for plaintiff "to prevail, then, it must be by using the proof scheme established in *McDonnell Douglas*"). Under this framework, a plaintiff "must first prove a *prima facie* case of discrimination by a preponderance of the evidence." *Id.*; *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 656 (4th Cir. 1998), *abrogated*

5

*on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). If she succeeds in establishing a prima facie case of her claim(s), then the burden shifts to the defendant to show legitimate, non-discriminatory reasons for the adverse action. *See Evans*, 80 F.3d at 959. If the defendant satisfies this burden, then the burden shifts back to the plaintiff to rebut the defendant's reason(s) by demonstrating that such reasons were not the real reasons but were pretext for discrimination. *See id.* The Court first examines Dr. Lynch's retaliation claim.

1. <u>Retaliation Claim</u>

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to discriminate against any individual because the individual has complained of, opposed, or participated in a proceeding about prohibited discrimination. 42 U.S.C. § 2000e-3(a). To survive a motion for summary judgment on a Title VII retaliation claim, Plaintiff must first establish a prima facie case of retaliation by showing: "(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 250 (alterations in original and internal quotation marks omitted).

It is undisputed that filing an EEOC Charge of Discrimination, as Plaintiff in this case did in Illinois in 2002, (*see* ECF No. 38-6 at 1), is a protected activity, and that Defendant's failure to hire Plaintiff constitutes an adverse employment action. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (stating that filing an EEOC complaint is a protected activity); *see also Wagstaff v. City of Durham,* 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002) (stating that "[i]n determining what constitutes an adverse employment action for Title VII purposes, the Fourth Circuit consistently has focused on 'whether there has been discrimination in what could be

6

characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating" (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981))), *aff'd*, 70 F. App'x 725 (4th Cir. 2003).

Duke does not contest that these first two elements of Plaintiff's prima facie case of retaliation have been satisfied. (*See* ECF No. 37 at 14–15.) Duke does argue, however, that Plaintiff cannot establish the third element—a causal relationship between the protected activity and the adverse employment action. (*Id.*) To establish the causal link between the protected activity and the adverse employment action, Plaintiff must "have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Dowe*, 145 F.3d at 657. Thus, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Id.*

According to Duke, "[t]here is no record evidence that the decision-maker, Dr. Vaughn, knew anything about Plaintiff's prior EEOC Charge and lawsuit." (ECF No. 37 at 14–15.) As Duke points out, "Dr. Vaughn expressly denies any such knowledge." (ECF No. 37 at 15 (citing ECF No. 36-6 ¶ 41).) In addition, the record shows that the other Duke employees with whom Plaintiff interacted during the interview process—none of whom were the ultimate decision-makers with respect to hiring for the positions at issue—expressly deny any knowledge of Plaintiff's prior EEOC Charge and lawsuit. (*See* ECF No. 36-7 ¶ 4; ECF No. 36-8 ¶ 3.) In her brief, "Plaintiff concedes that she does not have direct evidence as to

7

when and how Dr. Vaughn or [Ms.] Anderson learned about Plaintiff's prior protected activity." (ECF No. 38 at 12.) Nor does Plaintiff present record evidence that Duke actually knew about the EEOC Charge. *See Causey v. Balog*, 162 F.3d 795, 803–04 (4th Cir. 1998) (stating that "[k]nowledge of a charge is essential to a retaliation claim").

Plaintiff instead argues that the following constitutes "substantial circumstantial evidence" demonstrating causal connection: (1) Duke no longer has records regarding internet searches conducted by Dr. Vaughn and Ms. Anderson during the relevant period; (2) Ms. Anderson would sometimes conduct searches "us[ing] Google or some other search engine" to obtain background information on candidates; (3) Ms. Anderson "does not recall whether she ever did an internet search regarding Plaintiff but admits that it is possible"; and (4) "[a] Google or internet browser search would have easily revealed information about Plaintiff's prior employment discrimination case." (ECF No. 38 at 12.) The Court concludes that this purported circumstantial evidence is not evidence at all; rather it demonstrates the absence of evidence on this critical element of Dr. Lynch's prima facie case. *See Robinson v. Baltimore City Police Dep't*, 181 F. Supp. 2d 470, 474 (D. Md. 2002) (finding that a causal connection could not be found due to an "evidentiary gap"). Nor are Plaintiff's additional and varied arguments regarding purported "further evidence [of] retaliatory intent," (ECF No. 38 at 13–16), exhibited during Duke's selection process even relevant to the issue of causation. Accordingly, based on the record, the Court finds that no reasonable juror could conclude that there was a causal connection between Duke's failure to hire Plaintiff and her protected activity. Because of Plaintiff's failure to establish a prima facie case of retaliation, the Court need not engage

the *McDonnell Douglas* framework further, and Duke is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

2. Sex Discrimination Claims

Plaintiff next alleges that Duke "discriminated against [her] by refusing to hire her because she is a woman, and by hiring an applicant and/or applicants who was/were, upon information and belief, male(s)." (ECF No. 9 ¶ 33.)

Title VII provides that it is an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie failure-to-hire discrimination claim based on her sex under Title VII, Plaintiff must demonstrate that she (1) belongs to a protected class; (2) she applied for a specific position; (3) she was qualified for that position; and (4) the employer rejected her for that position under circumstances giving rise to an inference of unlawful discrimination. *See Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).

Plaintiff first argues "that she has established a prima facie case of sex discrimination with respect to Duke's decision to select Dr. Spotts rather than Plaintiff for one of the three student health physician positions." (ECF No. 38 at 16–17.) In its brief, although Duke argues that Plaintiff cannot establish a prima facie case as to the first two positions filled which were filled by women, (ECF No. 37 at 16), it is silent on whether Plaintiff has established a prima facie case as to the hiring of Dr. Spotts, (*see id.*). Duke begins its discussion regarding its non-discriminatory reasons for hiring Dr. Spotts by stating: "[r]egarding the hiring of Dr. Spotts, Duke has more than satisfied its burden to articulate a legitimate non-discriminatory

9

reason for its decision." (*Id.* at 17.) Based on Duke's failure to address whether Plaintiff has established a prima facie case related to its failure to hire Plaintiff for the third available position, this Court concludes that Duke has so conceded. Further, because "Plaintiff concedes that Duke has *articulated* a non-discriminatory reason for Dr. Spotts's selection by asserting that Dr. Vaughn believed that Dr. Spotts was better qualified for the position," (ECF No. 38 at 17 (emphasis in original)), under the *McDonnell Douglas* framework, we next move to whether Plaintiff can establish pretext. Duke contends that Plaintiff cannot establish pretext, and this Court agrees.

"Once the question comes down to pretext, a plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000)). A plaintiff can prove pretext by showing that the alleged nondiscriminatory explanation is "unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [sex] discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (internal quotation marks omitted). However, a plaintiff may not "simply show that the articulated reason is false; [s]he must also show that the employer discriminated against [her] on the basis of [sex]." *Laber v. Harvey*, 438 F.3d 404, 430–31 (4th Cir. 2006). "An employer is entitled to summary judgment on the issue of pretext if the employee 'create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had

occurred.'" *Howard v. Coll. of the Albermarle*, 262 F. Supp. 3d 322, 332 (E.D.N.C. 2017) (alterations in original) (quoting *Reeves*, 530 U.S. at 148), *aff'd*, 697 F. App'x 257 (4th Cir. 2017).

Here, Plaintiff argues that "Dr. Vaughn and Anderson treated [her] differently than Dr. Spotts during the selection process." (ECF No. 38 at 17.) In support, she cites the following: (1) that Dr. Vaughn and Ms. Anderson "checked the references of Dr. Spotts but declined to check Plaintiff's references," (*id.*); (2) that "Dr. Vaughn was not concerned that Dr. Spotts wished to leave his current practice because he was burned out [whereas] he was concerned that Plaintiff wished to leave emergency medicine because she was burned out," (*id.*); and (3) "[o]n May 10, 2014, Dr. Vaughn emailed [Ms.] Anderson and, when discussing Dr. Spotts, noted that 'we're going to need another male doc,'" (*id.*). Plaintiff argues that "[t]hese facts, combined with the fact that Dr. Vaughn and [Ms.] Anderson ignored Dr. Spotts's case summaries regarding malpractice issues, are sufficient to allow a reasonable juror to infer that the reasons advanced by Duke for selecting Dr. Spotts were false and instead were a pretext for sex discrimination." (*Id.*) Plaintiff further argues that "[s]uch an inference is buttressed by [Ms.] Anderson telling Plaintiff . . . that a mother should stay at home with young children instead of working." (*Id.*)

As Duke points out, the Fourth Circuit has held that, at this stage, Plaintiff's burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (alteration in original) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Here, none of the facts offered by Plaintiff create an inference that the reason articulated by Duke for hiring Dr. Spotts—that Dr. Spotts was more

11

qualified than Plaintiff—is false, particularly in light of evidence in the record showing that: (1) Duke had three available Student Health Physician positions, two of which Duke filled with members of the same protected class as Plaintiff;[3] (2) of the ten candidates selected for in-person interviews, seven were women;[4] (3) throughout the hiring process Dr. Vaughn had reservations about Dr. Lynch's ability to "establish[ ] the empathetic doctor-patient relationship with students . . . essential to providing effective care in student health";[5] (4) Dr. Vaughn expressed concern during the hiring process about whether Dr. Lynch's "personality [would] mesh" with the staff members in the Student Health department, and he questioned her motivation for seeking the position;[6] and (5) Dr. Vaughn testified that Dr. Wooten, the female physician hired for the second available position in question, volunteered that she and her husband were trying to start a family.[7] Moreover, Plaintiff has presented no evidence that her status as the mother of five children, in any way, factored into the final selections made by the decision-maker, Dr. Vaughn. The Court is, therefore, unpersuaded by Plaintiff's attempts to demonstrate that Duke's proffered reason for hiring Dr. Spotts (instead of Plaintiff) was false and motivated by discrimination. Thus, given Plaintiff's failure to establish a genuine issue of material fact regarding pretext, Duke is entitled to summary judgment on Plaintiff's sex discrimination claim.

Nor is Plaintiff's "sex plus" claim any more persuasive. Plaintiff contends that "she has shown sufficient evidence to permit an inference that she was not selected for the student

---

[3] *See* ECF No. 36-6 ¶¶ 17, 36; ECF No. 38-6 at 26–28.
[4] *See* ECF No. 36-6 ¶ 36.
[5] ECF No. 36-6 ¶ 21; ECF No. 38-6 at 33.
[6] *Id.*
[7] ECF No. 38-2 at 31–32; *see* ECF No. 38-6 at 42.

health position because of her sex and her status as a primary caregiver for her five children." (ECF No. 38 at 19.) A "sex plus" discrimination claim is one where "discrimination is based on a combination of sex and a facially neutral factor." *Earwood v. Cont'l Se. Lines, Inc.*, 539 F.2d 1349, 1351 (4th Cir. 1976). "Under this theory, regulations limiting employment of women with small children or who are married, but not restricting men similarly situated, have been struck down." *Id.* As recognized by the Fourth Circuit, "[t]he objective of Title VII is to equalize employment opportunities," and, as such, "discrimination based on either immutable sex characteristics or constitutionally protected activities such as marriage or child rearing violate the Act because they present obstacles to employment of one sex that cannot be overcome." *Id.*

While the Fourth Circuit has not directly addressed the requirements necessary to prove a "sex plus" claim, it has explained generally that a comparator is required to establish a prima facie claim of gender discrimination. *See Gerner v. Cty. of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (holding that, among other things, a prima facie claim requires a showing "that similarly-situated employees outside the protected class received more favorable treatment"). Similarly, other district courts in this circuit have held that a comparator is required in "sex plus" discrimination cases. *See e.g.*, *Jordan v. Radiology Imaging Assocs.*, 577 F. Supp. 2d 771, 785 (D. Md. 2008) (holding that, to establish a prima facie case, a "sex plus" claim requires a comparator); *Samuels v. City of Baltimore,* No. RDB 09-458, 2009 WL 3348134, at \*6 (D. Md. Oct. 15, 2009) (unpublished), 2009 WL 3348134, at \*6 (stating that "to establish a *prima facie* case based on a 'sex plus' theory of employment discrimination, the plaintiff must show that similarly situated [women] were treated differently than [men]) (internal quotation marks

omitted); *Hess-Watson v. Potter*, No. 703CV00389, 2004 WL 34833, at *2 (W.D. Va. Jan. 4, 2004) (explaining that a male comparator is necessary to establish a viable 'sex plus' discrimination claim).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that she has failed to establish a prima facie case of "sex plus" discrimination by showing that "similarly situated" men—i.e., men who were the primary caregiver for their children—were treated differently than Plaintiff. *See Hess-Watson*, 2004 WL 34833, at *2. Specifically, the record is devoid of any evidence to suggest that Dr. Spotts, or any other male physician serving as a primary caregiver for their children, were treated differently than Plaintiff. Thus, "in the absence of a male comparator, this simply does not establish a viable 'sex plus' discrimination claim." *Id. See Jordan*, 577 F. Supp. 2d at 785 (dismissing plaintiff's "sex plus" claim because plaintiff failed to present "evidence that women with children were treated differently from men with children").

Moreover, irrespective of whether a comparator is required, Plaintiff points to no evidence in the record to show that Dr. Vaughn discriminated against her because of her sex and her status as the primary caregiver for her five children. Further, to the extent that Plaintiff relies on comments made to her by Ms. Anderson that "women who have small children should . . . stay[ ] at home," (ECF No. 38-1 at 45), the Court finds this evidence of little probative value, given that Ms. Anderson was not the decision-maker with respect to hiring decisions at Duke, (*see* ECF No. 36-6 ¶ 37). Plaintiff has, therefore, failed to produce sufficient facts to establish a prima facie case of "sex plus" discrimination. Accordingly, Duke is likewise entitled to judgment as a matter of law on this claim.

## III. MOTION TO SEAL

The Court will next address Plaintiff's Motion to Seal. Plaintiff moves this Court to file under seal Deposition Exhibit 53 in conjunction with Plaintiff's Memorandum in Response and Opposition to Defendant's Motion for Summary Judgment. (*See* ECF No. 41.) Deposition Exhibit 53, titled "Duke Medicine Physician Questionnaire," was "submitted by one of the successful applicants for the student health physician positions for which Plaintiff applied." (ECF No. 41 ¶ 5.) Plaintiff, in her motion, states: "Counsel for Plaintiff has conferred with Counsel for Defendant with respect to the filing of Deposition Exhibit 53 [and] Counsel for Defendant has advised that Defendant believes Deposition Exhibit 53 should be filed under seal." (*Id.* ¶ 4.) Plaintiff further states that she does not object to Defendant's request. (*Id.* ¶ 6.)

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* "The common law," however, "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford*, 846 F.2d at 253). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and

documents." *Id.* at 266. Further, the First Amendment presumptive right of access may only be restricted upon a showing that such a restriction is "necessitated by a compelling government interest and . . . narrowly tailored to serve that interest." *Id.* (internal quotation marks omitted).

"When presented with a request to seal[8] judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Substantively, a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576). The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Id.* at 267. Therefore, the First Amendment right of access applies in this case, as the document that Plaintiff has moved to seal was filed with the Court in support of her brief in response and opposition to Duke's summary judgment motion.

Procedurally, a district court presented with a sealing request must "(1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* at 272. Local Rule 5.4 outlines similar requirements.[9] LR 5.4. The burden rests on the party seeking to keep information sealed.

---

[8] Courts construe a request to redact a document as a request to seal in part. *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 424–25 (M.D.N.C. 2011) (collecting cases).

[9] These requirements are: (1) stating "the reasons why sealing is necessary;" (2) explaining "why less drastic alternatives to sealing will not afford adequate protection;" (3) "[a]ddress[ing] the factors governing sealing of documents reflected in governing case law;" and (4) stating "whether permanent sealing is sought and, if not,

*Va. Dep't of State Police*, 386 F.3d at 575. Here, Duke, as the party seeking to maintain the confidentiality of this document, bears this burden.

Considering both the substantive and procedural requirements necessary to rebut the First Amendment presumption of public access to the document in question, Duke has satisfied its burden. First, public notice of the request to seal presently before the Court was provided in December 2017, when Plaintiff filed the motion to seal and Duke filed its supporting brief. (*See* ECF Nos. 41, 45.) No objection has since been raised. Next, Duke's interests in preserving the confidentiality of the sensitive personal information regarding non-parties is sufficiently compelling to overcome the First Amendment presumptive right of access. *See Robinson v. Bowser*, No. 1:12CV301, 2013 WL 3791770, at *4 (M.D.N.C. July 19, 2013) (explaining that the interest in keeping "sensitive personal material regarding third parties[ ] private outweighs the First Amendment right of access" (citing *Brigham Young Univ. v. Pfizer, Inc.,* 281 F.R.D. 507, 511–12 (D. Utah 2012) ("[J]udicial documents may still be kept under seal if there are weightier countervailing factors in the common law or 'higher values' in the First Amendment framework. Thus, even with judicial documents, a court must balance . . . the private interests of innocent third-parties . . . ." (internal footnote and some quotation marks omitted); *Nettles v. Farmers Ins. Exch.,* No. C06–5164RJB, 2007 WL 858060, at *1 (W.D. Wash. Mar. 16, 2007) (unpublished decision) (granting motion to seal in part because information at issue related to nonparties "who have not sought to place [their] private information in the public sphere" (alteration in original)); *Vassiliades v. Israely,* 714 F. Supp. 604,

---

stat[ing] how long the document should remain under seal and how the document should be handled upon unsealing." LR 5.4(b).

605 (D. Conn. 1989) ("Both the common law and the [F]irst [A]mendment protect the public's right of access to court documents. . . . The right of access, however, is not absolute. It can be overcome by a showing that placing the documents in question under seal will further other substantial interests, for example, . . . a third party's privacy interests."))).

Further, the parties' proposed redactions, (*see* ECF No. 40), which appear narrowly tailored to serve their compelling interests, is a less drastic alternative to sealing the entire document. Sealing the entire questionnaire would unnecessarily diminish the public's right of access. The Court will, therefore, grant Plaintiff's motion to seal, in part, portions of the "Duke Medicine Physician Questionnaire," Deposition Exhibit 53.

## IV. CONCLUSION

Based on the above, the Court concludes that no genuine issues of material fact exist as to Plaintiff's claims of race discrimination, retaliation, and sex discrimination under Title VII. The Court further concludes that no genuine issues of material fact exist as to Plaintiff's age discrimination claim under the ADEA. Accordingly, Duke is entitled to summary judgment on each of Plaintiff's claims against it.

The Court further concludes that Duke has carried its burden of satisfying the requirements to permanently seal, in part, portions of the "Duke Medicine Physician Questionnaire," Deposition Exhibit 53. The Court will, therefore, permanently seal the unredacted version of the questionnaire, (ECF No. 43), filed by Plaintiff as an exhibit to Plaintiff's summary judgment response brief. A redacted version of the questionnaire, (ECF No. 40), shall be accessible to the public.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Duke University's Motion for Summary Judgment, (ECF No. 36), is GRANTED, and this action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's Motion to Seal, (ECF No. 41), is GRANTED, and the unredacted version of Deposition Exhibit 53, titled "Duke Medicine Physician Questionnaire," (ECF No. 43), is and shall be permanently sealed. A redacted version of the questionnaire, (ECF No. 40), shall be accessible to the public.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 16th day of March, 2018.

/s/ Loretta C. Biggs
United States District Judge